**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Burton,<br><br>                Plaintiff,<br><br>v.<br><br>United Services Automobile Association, et al.,<br><br>                Defendants. | No. CV-22-00837-PHX-DWL<br><br>**ORDER** |

**INTRODUCTION**

In August 2018, Christopher Burton ("Plaintiff") got into an automobile accident with an uninsured motorist. At the time, Plaintiff held an insurance policy issued by United Services Automobile Association ("USAA") that provided coverage for uninsured motorist ("UM") benefits. Plaintiff submitted a claim for UM benefits but USAA denied the claim on the ground that Plaintiff was fully responsible for the accident. Later, USAA offered to settle Plaintiff's claims for $35,000. Plaintiff rejected that offer and sued USAA for breach of contract, insurance bad faith, and punitive damages.

Now pending before the Court is USAA's motion for summary judgment. (Doc. 20.) For the following reasons, USAA's motion is granted.

**BACKGROUND**

I.    <u>The Accident</u>

The facts set forth below are derived from the parties' summary judgment submissions and other documents in the record, with any conflicts viewed in the light most

favorable to Plaintiff.

On August 27, 2018, sometime between 4:45 and 5:30 pm, Plaintiff got into an accident on State Route 143 near Phoenix Sky Harbor airport . (Doc. 22 at 10-11.) Plaintiff was driving in the middle lane of the three-lane highway, by himself, with his seatbelt fastened. (*Id.* at 12.) It was a clear day and there was some stop-and-go traffic. (*Id.*) During a phone call with a USAA representative on September 10, 2018 (*i.e.*, about two weeks after the accident), Plaintiff provided the following description of how the accident occurred: "I was able to go 30 [miles per hour] which felt like I was moving at a fairly decent speed but not not fast at all. I mean 30 seems pretty slow on the highway. . . . And uh, and then and then I had the sensation of being hit uh, from what I recall to be on my right side." (*Id.*) During this conversation, Plaintiff did not provide any more details about the circumstances leading up to the collision. However, during an interview with a police officer immediately after the accident, Plaintiff stated that the accident occurred "when [Plaintiff] attempted to merge into the #3 lane." (Doc. 20-3 at 4.) As for the other driver, the police report states that he or she briefly "stayed" at the scene of the accident "to check on occupants" but "did not stay to give information." (*Id.*) The report also contains the following diagram, which suggests that Plaintiff (in Vehicle 1) crossed over the lane divider and struck another vehicle (Vehicle 2) that was traveling within its designated lane:



1  (*Id.*) Plaintiff ultimately received a civil citation for the accident under A.R.S. § 28-701A
2  for "failure to control vehicle to avoid a collision." (Doc. 20-5.)

3  As for what occurred immediately following the collision, Plaintiff remembers
4  "flipping over . . . within like a second and a half." (Doc. 22 at 12.) Plaintiff's car was
5  flipped onto its side (with the driver's side facing the ground) and continued to slide "with
6  [Plaintiff's] head hitting the side bar and the window repeatedly," which eventually
7  "knocked [him] out." (*Id.* at 13.) While on its side, Plaintiff's car slid forward and its tires
8  hit the driver's side window of the car in front of him, driven by Andrew Herr. (*Id.* at 17.)
9  Bystanders helped remove Plaintiff from his car through the passenger-side window. (*Id.*
10 at 13.) Plaintiff did not receive medical attention at the scene. (*Id.*) Instead, a police
11 officer administered field sobriety examinations and, once satisfied that Plaintiff was not
12 intoxicated, drove Plaintiff to a gas station to meet Plaintiff's dad. (*Id.* at 15.)

13 Less than an hour after the accident, Plaintiff "started . . . slurring [his] words really
14 bad" and "not making sense." (*Id.*) Plaintiff was ultimately diagnosed with a concussion
15 and a brain bleed, which later caused seizures. (*Id.* at 15-16.) At the hospital, Plaintiff
16 remembered "the car that had hit [him] left the scene" based on his recollection of other
17 people talking at the accident but didn't actually see the "black SUV before it impacted
18 [him]" because he was "looking ahead [be]cause traffic was . . . stop and go." (*Id.* at 16-
19 17.)

20 After the accident, Plaintiff suffered from "various bouts with . . . amnesia." (*Id.* at
21 17-18.) However, when he spoke with a USAA representative on September 10, 2018,
22 Plaintiff assured the representative that the amnesia "stopped two days ago," with the
23 caveat that he didn't "know if it'll . . . come back or not." (*Id.* at 17.) When the USAA
24 representative asked Plaintiff "how Andrew Herr's vehicle was involved," Plaintiff
25 responded:

26 > Uh not uh, you know, it, I have, I have a slight memory of . . . him saying that my tires um, after I went sideways[,] my tires . . . slid up against the uh, um, left side of his car[,] the driver's side. . . .
27
28 > I believe he was the car that was directly in front of me. . . . I saw some damage to it, but my memory that's uh somewhat sketchy. But . . . I

- 3 -

> definitely remember him saying [your] tires hit the side of my car. . . . I then . . . recall seeing some damage. I'm 99 percent sure that he was the car directly in front of me.

(*Id.*)

On September 20, 2018, Plaintiff had another conversation with a USAA representative regarding the accident. (Doc. 20-4 at 14.) Although that conversation, unlike the September 10, 2018 conversation, was apparently not transcribed, the USAA representative's notes from the September 20, 2018 conversation includes the notations "advsd of liability—[]no dispute" and "d/not recall fol much anyway." (Doc. 20-4 at 14.)[1]

II. <u>Insurance Dispute</u>

Plaintiff's USAA insurance policy defines the term "Uninsured motor vehicle" as a "hit-and-run motor vehicle" whose "owner or operator cannot be identified and that hits or causes an accident resulting in [bodily injury] without hitting . . . [y]ou or any family member." (Doc. 20-1 at 4.) The policy further provides that "[w]e will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of [bodily injury] sustained by a covered person and caused by an auto accident." (*Id.* at 5, emphases omitted.)

USAA initially determined that Plaintiff was "100%" at fault for the accident, describing the circumstances as "[l]ost control/skidded/swerved." (Doc. 20-6 at 8.) USAA's more detailed liability analysis was as follows: "[Plaintiff] brchd duty of Moving from a marked traffic lane without first ascertaining that such movement could be made with safety. prxmte cause of loss is [Plaintiff] made lane change to rt and struck unk cv unk cv lft scene. [Plaintiff] then lost control, flipped and struck cv. no cmp neg. . . ." (*Id.*)

On January 12, 2022, Plaintiff's lawyers sent a letter to USAA demanding payment of the nearly $75,000 in medical expenses that Plaintiff incurred as a result of the accident.

---

[1] In a declaration, USAA claims manager Braiden Leighton-Mejia states that on "September 20, 2018, Henry Hayama finalized the liability assessment and determined Plaintiff was 100% liable for the Accident. . . . Also on September 20, 2018, Henry Hayama contemporaneously recorded notes from his conversation with Plaintiff. During that conversation, Henry Hayama advised Plaintiff of his liability determination, and Plaintiff did not dispute he was 100% liable for the Accident." (Doc. 20-6 at 19 ¶¶ 15-16.)

(Doc. 20-6 at 2-4. *See also* Doc. 20-4 at 32 [outlining Plaintiff's medical expenses].)

On February 20, 2022, USAA offered to settle Plaintiff's claim for $35,000 by allocating 25% fault to the other driver. (Doc. 20-6 at 10-11.) More specifically, the letter explained that even though USAA "had finalized liability 100% on [Plaintiff] based on his driver statement and police report . . . we have evaluated his [claim] with some presumed negligence on the unknown driver that [Plaintiff] was involved with. Therefore, this evaluation and settlement offer is based on 75% liability on [Plaintiff] and 25% on the unknown driver." (*Id.* at 10.)

III.  Procedural History

On March 14, 2022, Plaintiff filed suit in Maricopa County Superior Court. (Doc. 1 at 8-17.)

On May 16, 2022, USAA timely removed the action to federal court. (Doc. 1.)

On July 5, 2022, the Court issued the case management order, initially setting the deadline for dispositive motions as May 26, 2023. (Doc. 12.)

On January 27, 2023, the Court extended the case management deadlines at the parties' joint request, extending the deadline for dispositive motions to August 25, 2023. (Doc. 18.)

On February 27, 2023, USAA filed the pending motion for summary judgment. (Doc. 20.) Plaintiff did not request leave under Rule 56(d) to conduct more discovery before responding and instead filed a response on the merits. (Doc. 22.) The motion is now fully briefed. (Doc. 24.)[2]

**DISCUSSION**

I.  Legal Standard

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of

---

[2]  USAA's request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

- 5 -

the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125 (internal quotation marks omitted).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Id.* at 1102-03. But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to produce evidence to support its claim or defense. *Id.* at 1103. The nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1). There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the

prism of the substantive evidentiary burden." *Id.* at 254. Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

II. Breach Of Contract

    A. **The Parties' Arguments**

In Count One, Plaintiff asserts a claim for breach of contract. (Doc. 1 at 12 ¶¶ 22-28.) The gist of this claim is that Plaintiff was "entitled to benefits" pursuant to the UM coverage clause in his policy and USAA failed to "make a good faith offer to pay" and did not "reasonably and promptly pay Plaintiff for his loss arising from the motor vehicle accident," which amounts to a "*de facto* denial of coverage" and a breach of the insurance contract. (*Id.* ¶¶ 23, 25-26.)

USAA argues it is entitled to summary judgment on Count One because Plaintiff cannot prove breach. (Doc. 20 at 4.) More specifically, USAA contends that Plaintiff cannot demonstrate that he is entitled to coverage because he "cannot prove the Uninsured Motorist's liability for the Accident." (*Id.*) Instead, USAA points to various statements by Plaintiff after the accident that demonstrate Plaintiff was in fact at fault, including that during a phone call with a USAA representative, "Plaintiff fail[ed] to contest USAA GIC's liability determination" and therefore made an "admission by silence." (*Id.* at 4-6.) USAA also emphasizes Plaintiff's faulty memory in the wake of the accident and the weeks the followed, which precludes Plaintiff from "now testify[ing] regarding liability." (*Id.* at 5-6.) Finally, USAA argues that Plaintiff has "disclosed no evidence of the Uninsured Motorist's liability" because neither the "police report" nor "Plaintiff's recorded statement" "establish the liability of the Uninsured Motorist." (*Id.* at 6-7.)

In response, Plaintiff disputes USAA's characterization of the evidence, arguing that his "statement that the accident occurred as he attempted to change lanes does not show [that he] admitted to being at fault, it shows when the accident occurred." (Doc. 22

at 3.)³  As for his recorded statement, Plaintiff contends that any characterization of his memory as "sketchy" referred only to his ability to recall Herr's involvement.  (*Id.* at 3.) Finally, Plaintiff argues that whether he adopted USAA's liability determination by silence is a jury question.  (*Id.* at 4.)  In a related vein, Plaintiff contends that USAA's notes do not clearly indicate what the USAA representative stated about USAA's liability determination (which undermines any claim that Plaintiff adopted that unspecified determination through silence).  (*Id.*)

In reply, USAA argues that Plaintiff "produced no evidence to support [his] conclusory allegations."  (Doc. 24 at 2.)  USAA contends that Plaintiff's statement to the police officer is admissible under Rules 803(1), 803(5) and 803(8) and argues that, "at worst, the Admission is neutral regarding liability" and "does not prove (or create a question of fact regarding whether) the Uninsured Motorist was more than 25% liable for the Accident."  (*Id.* at 4.)  USAA also argues that Plaintiff does not dispute its evidence regarding his various memory lapses and has not offered any evidence that the other driver was at fault for the accident.  (*Id.* at 4-5.)  As for the alleged admission by silence, USAA argues that, unlike in the cases cited by Plaintiff, "Plaintiff has presented no conflicting evidence . . . denying he heard the liability determination, claiming he misunderstood the statement, or was denied an opportunity to dispute the liability determination."  (*Id.* at 5-6.)  USAA concludes that "even if Plaintiff's admission to [the police officer] is *not* admissible, Plaintiff's memory is *not* 'sketchy,['] and Plaintiff did *not* admit fault for the Accident by silence, USAA GIC is still entitled to summary judgment . . . because Plaintiff failed to produce evidence that establishes essential elements of his claims."  (*Id.* at 3.  *See also id.* at 6 ["Plaintiff has produced no evidence to support his allegation that USAA GIC breached the contract by allocating 25% liability to the Uninsured Motorist."].)

…

…

---

³  Plaintiff also disputes the admissibility of his statement under Federal Rules of Evidence 801 and 802.  (Doc. 22 at 3.)

B. **Analysis**

Under Arizona law, a party asserting a claim for breach of contract must prove (1) the existence of the contract; (2) a breach of that contract; and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something to the contract which the parties have not put there." *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20, 23 (Ariz. 1964). "[T]he relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Voland v. Farmers Ins. Co. of Ariz.*, 943 P.2d 808, 811 (Ariz. Ct. App. 1997) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986)). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000).

Here, although neither side focuses on the language of the policy, both sides seem to agree that, to trigger USAA's duty to provide coverage, Plaintiff must show that he "was entitled to coverage, i.e., that the uninsured motorist was at fault for the accident." (Doc. 22 at 2, emphasis omitted; Doc. 20 at 4 ["To recover UM benefits, Plaintiff must prove the liability of the Uninsured Motorist and the amount of damages caused by the Uninsured Motorist".].)

As a threshold matter, the parties dispute the admissibility of Plaintiff's statement to the police officer following the accident. (Doc. 20 at 5; Doc. 22 at 3.) USAA argues the statement is admissible under Rules 801 and 803 (Doc. 20 at 5) while Plaintiff argues it is "hearsay under Federal Rules of Evidence Rules 801 and 802" (Doc. 22 at 3). On the one hand, USAA has the better side of this evidentiary dispute—Plaintiff's statement to the officer falls outside the definition of hearsay because it is a party-opponent admission under Rule 801(d)(2)(A) and the police report memorializing the party-opponent admission

qualifies as a public record under Rule 803(8). *See, e.g.*, *Jordan v. Binns*, 712 F.3d 1123, 1134 (7th Cir. 2013) ("[T]he district court did not abuse its discretion in admitting the portion of the Crash Report recording Ted's statement reciting what Betty had said: neither Betty's nor Ted's statements are hearsay, and the Crash Report itself is an admissible public record."); *Hill v. Lazarou Enter's, Inc.*, 2011 WL 124630, *1 (S.D. Fla. 2011) ("The Court finds that the police report . . . is admissible in the instant case . . . pursuant to the public records exception to the hearsay rule in Rule 803(8). Additionally, the plaintiff's statements within the police report . . . are not hearsay because they are an admission by a party opponent.") (citations omitted). On the other hand, the statement itself does not, at least when construed in the light most favorable to Plaintiff as the non-movant at summary judgment, qualify as an admission that Plaintiff was at fault for the accident. Instead, a rational juror could construe it as a mere factual description of when the accident occurred—specifically, as Plaintiff "attempted to merge." (Doc. 20-3 at 4.) The Court is aware of no rule holding that any accident that occurs when one driver is attempting to merge is necessarily the fault of the merging driver.

The parties also dispute the admissibility and significance of Plaintiff's statements/omissions during the September 20, 2018 phone call with a USAA representative. As discussed, the notes from the call include the notations "advsd of liab—[]no dispute" and "d/not recall fol much anyway." (Doc. 20-4 at 14.) According to USAA, this qualifies as an "admission by silence" under Rule 801. (Doc. 20 at 6.) In response, Plaintiff contends that the statement does not qualify as an adoptive admission for purposes of Rule 801 because the notes do not indicate *who* USAA had determined was liable (*i.e.*, Plaintiff or the other driver). (Doc. 22 at 4.) USAA counters that this statement is admissible under Rule 801(d)(2)(B) or, alternatively, that "Plaintiff's failure to present evidence contradicting USAA GIC advising Plaintiff that it allocated 100% liability to Plaintiff deems that fact admitted." (Doc. 24 at 5-6.)

This is another instance where the parties' dispute over admissibility is something of a red herring. Even assuming, as USAA contends, that Plaintiff's statement/omission

during the call (as reflected in the notes) might be *admissible* against Plaintiff under Rule 801(d)(2)(B) as an adoptive admission, it doesn't follow that the existence of this admissible statement/omission entitles USAA to summary judgment. At most, the statement/omission is one piece of evidence favoring USAA's position, not a conclusive judicial admission that somehow bars Plaintiff from presenting contrary evidence on the issue of fault and liability during this lawsuit. *See, e.g.*, *In re Fremont Gen. Corp.*, 2015 WL 1286492, *11 (C.D. Cal. 2015) ("Assuming for the sake of argument that FGC's failure to respond constituted an adoptive admission, Appellants confuse that evidentiary admission with a conclusive judicial admission. Judicial admissions, are binding on the party, and are generally unambiguous affirmative statements made by counsel in the context of litigation, and commonly arise by way of stipulations, pleadings, statements in pretrial orders, and responses to requests for admissions. Some degree of formality is entailed. . . . If anything, FGC's failure to respond to Walker's letter constitutes an evidentiary admission. Evidentiary admissions, unlike judicial admissions, are mere evidence, are not conclusive, and may be contradicted by other evidence. Evidentiary admissions may be discredited or disbelieved by the trier of fact. As the Seventh Circuit correctly put it, an evidentiary admission is just one more bit of evidence to weigh against other evidence in the case.") (cleaned up). *Cf. Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) ("Since Universal's admissions in arbitration as to the cause of the fire were not conclusively binding in the separate district court suit, the admissions were sufficiently contradicted by Universal's summary judgment evidence to raise a genuine issue of material fact."); *State Farm Mut. Auto Ins. Co. v. Worthington*, 405 F.2d 683, 687 (8th Cir. 1968) (holding, in an insurance coverage dispute turning on whether Stevens's conduct was intentional, that Stevens's earlier "plea of guilty in the criminal case . . . [was] admissible as an admission against interest but it [was] not conclusive").

These clarifications, however, do not end the summary judgment analysis. Even though USAA's proffered evidence does not conclusively establish the *lack* of fault by the other driver, USAA is not required to make such a showing under Rule 56. Rather, because

Plaintiff is the party who will ultimately bear the burden of establishing the *existence* of fault by the other driver, USAA may also seek summary judgment by pointing out the absence of evidence on that issue. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks and citations omitted); 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 56, at 160 (2022) ("[A]ll courts agree—and this was the critical point of *Celotex*—that the moving party's only burden is to address the existing proof record and in some measure identify some hole in that proof. The moving party need go no further, and in particular is not obligated to submit new proof showing that there is nothing missing that could fill that hole.").

USAA made such a *Celotex* argument here. (Doc. 20 at 6, cleaned up ["Plaintiff has revealed no evidence of the uninsured motorist's liability . . . ."].) Accordingly, the burden shifted to Plaintiff to come forward with evidence from which a reasonable factfinder could conclude that the uninsured motorist was at fault for the collision.

Plaintiff has not met that burden. In response to USAA's early summary judgment motion, Plaintiff did not make a Rule 56(d) request to conduct more discovery (such as hiring an accident reconstructionist) and instead chose to submit a single piece of evidence—the transcript of the conversation between Plaintiff and USAA's representative on September 10, 2018. (Doc. 22 at 10-19.) More specifically, Plaintiff cites the following excerpt from the transcript: "[T]hen I had the sensation of being hit uh, from what seemed to be my right side." (Doc. 22 at 5, citing *id.* at 12.)[4] But this sentence does not give rise to a reasonable inference that the other driver was *at fault* for the accident. At most, it describes where Plaintiff felt the impact. Such a statement provides no information about why the collision occurred or who was at fault. Thus, Plaintiff's evidence is insufficient to

---

[4] Plaintiff's other statements during the recorded conversation do not help his case. For example, when asked about several aspects of the incident, Plaintiff represented that he either did not recall or did not see what happened. (*See, e.g.*, Doc. 22 at 17 [Q: "Did you ever see that vehicle, that black SUV before it impacted you? A: "No I didn't. No I was . . . looking straight ahead [be]cause traffic was . . . stop and go."].)

raise a triable issue of fault as to the other driver's fault. *See also Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

Accordingly, summary judgment is granted in USAA's favor on Count One.

III. Bad Faith

    A.    **The Parties' Arguments**

In Count Two, Plaintiff alleges that USAA breached its duty of good faith and fair dealing by, among other things, "fail[ing] to adequately investigate; fail[ing] to treat Plaintiff's claims with equal consideration; fail[ing] to make a good faith offer; fail[ing] to reasonably and promptly pay Plaintiff on his claim; and fail[ing] to make reasonable efforts to alleviate the necessity of litigation." (Doc. 1 at 13-14 ¶¶ 29-36.)

USAA contends that Count Two fails because its determination that "Plaintiff was 100% liable for the Accident" was reasonable based on "Plaintiff's admission at the scene, Plaintiff's recorded statement, non-party Wendell Herr's recorded statement,[5] and the property damage" as well as the "investigating police officer's contemporaneous interviews, observations, and conclusions." (Doc. 20 at 8.) USAA further contends that its offer of $35,000 was "more-than-reasonable" based on its revised 75% liability calculation and the "Accident-related damages" valuation of "$139,998 to $199,999." (*Id.* at 8-9.)

In response, Plaintiff asserts a generalized hearsay objection to all of USAA's proffered evidence and concludes "that Plaintiff's statement regarding changing lanes does not in itself establish fault. If Plaintiff was not at fault for the accident, USAA's determination of 100% fault on Plaintiff is not reasonable." (Doc. 22 at 5.)

In reply, USAA argues it "had numerous reasonable bases for its liability allocation," including (1) Plaintiff's admission to the police officer that "the Accident occurred when he merged into the Uninsured Motorist's lane"; (2) Plaintiff's admission

---

[5] Wendell Herr is a passenger in the vehicle that Plaintiff's vehicle hit. (Doc. 20-4 at 11.)

- 13 -

during his recorded statement that "he recalled no details regarding liability, he did not recall seeing the Uninsured Motorist before the Accident, and he did not even recall if another vehicle was involved in the Accident"; (3) non-party Wendell Herr's statement that "he had no information regarding who was liable for the Accident"; (4) the police officer's conclusion, "based on his contemporaneous interviews and observations," that "Plaintiff was liable for the Accident"; and (5) the fact that the police officer "cited Plaintiff for failing to control his speed to avoid a collision." (Doc. 24 at 7.) USAA concludes that it "cannot be liable for bad faith" because it "had a reasonable basis for its allocation" of fault. (*Id.*)

B. **Analysis**

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party may also breach the implied covenant if it "exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Beaudry v. Ins. Co. of the W.*, 50 P.3d 836, 841 (Ariz. Ct. App. 2002) (citation omitted). A plaintiff does not necessarily have to show a breach of the contract to demonstrate bad faith. *Wells Fargo Bank*, 38 P.3d at 29 ("Conversely, because a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract.").

Here, Plaintiff has not proffered sufficient evidence to avoid summary judgment on his bad faith claim. Even if, as explained, Plaintiff's statement to the police officer about merging and Plaintiff's purported adoptive admission during the September 20, 2018 phone call with the USAA representative may not be the conclusive, smoking-gun admissions that USAA portrays them to be, they still don't *help* Plaintiff's case or suggest

that the other driver was at fault (let alone suggest that USAA's fault determination was reached in bad faith). Nor does Plaintiff argue that USAA's other proffered evidence could be construed as raising an inference that the other driver was at fault—to the contrary, Plaintiff objects to all of USAA's other evidence on hearsay grounds.

The record in relation to Count Two is thus similar to the record in relation to Count One. Although Plaintiff raises questions about whether USAA's proffered evidence is sufficient to conclusively establish that USAA acted in good faith, Plaintiff ignores that it is his burden, under *Celotex*, to come forward with some evidence from which a reasonable juror could conclude that USAA did *not* act in good faith. *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 23 (Ariz. Ct. App. 1990) (noting that a plaintiff must prove breach of duty of good faith and fair dealing by a preponderance of the evidence). "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981) (citation omitted). Here, Plaintiff contends that he can "succeed on his claim . . . of bad faith as Defendant acted to serve its own interests" but provides no supporting evidence. As noted, the sole evidence he proffers is the transcript of the September 10, 2018 conversation in which he simply mentioned that the collision involved the right side of his vehicle and provided no details suggesting that the other driver was at fault.

Therefore, USAA's motion for summary judgment in its favor on Count Two is granted.

…

…

IV.     Punitive Damages

In Count Three, Plaintiff alleges that he should be awarded punitive damages because USAA "acted with an evil mind" or with a "consistent pattern to undermine the security of its own insurance policies to the detriment of its insureds, including Plaintiff." (Doc. 1 at 15 ¶¶ 37-40.)

USAA argues that Plaintiff cannot prove "by clear and convincing evidence" that it "acted with an evil mind." (Doc. 20 at 10, capitalization changed and emphasis omitted.) In response, Plaintiff argues that USAA "sought at every turn, as demonstrated throughout their motion, to twist Plaintiff's statements without regard to their context or meaning. This is not the work of an 'altruistic mind' but rather the hallmark of an 'evil mind,' working to service their own interests." (Doc. 22 at 5-6.) In reply, USAA reiterates that "Plaintiff's claim for punitive damages fails as a matter of law because Plaintiff produced no evidence USAA GIC acted with the requisite evil mind to prevail on a claim for punitive damages." (Doc. 24 at 8.)[6]

As an initial matter, because summary judgment has been granted in USAA's favor as to Count Two, Count Three fails as well. Under Arizona law, "[t]here is no such thing as a cause of action simply for punitive damages. Rather, the right to an award of punitive damages must be grounded upon a cause of action for actual damages." *Quiroga v. Allstate Ins. Co.*, 726 P.2d 224, 226 (Ariz. Ct. App. 1986). *See also Edmond v. Fairfield Sunrise Vill., Inc.*, 644 P.2d 296, 298 (Ariz. Ct. App. 1982) ("A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished, actual damages being necessary to support punitive damages."); *Warfield for Cheryl Sam & Carleen Sam Bankr. Ests. v. Ledbetter L. Firm PLC*, 2019 WL 6215905, *5 (Ariz. Ct. App. 2019) ("The trial court did not err by dismissing the punitive damage claim against State

---

[6] USAA also argues that "[i]f Plaintiff felt he needed more time to muster affirmative evidence to establish USAA GIC breached the Policy, USAA GIC acted knowingly or recklessly unreasonable, and USAA GIC acted with an evil mind, then Plaintiff could have filed a motion under FRCP 56(d). Plaintiff, however, did not do so. Accordingly, USAA GIC is entitled to summary judgement on all claims because Plaintiff has produced no evidence to establish essential elements of his claims." (Doc. 24 at 9.)

Farm. Because the bad faith claim was properly dismissed, Warfield's first amended complaint failed to state a claim for punitive damages upon which relief could be granted.").

Plaintiff's claim for punitive damages also fails on the merits. "The question of whether punitive damages are justified should be left to the jury if there is any reasonable evidence which will support them. The evidence, however, must be more than slight and inconclusive such as to border on conjecture." *Farr v. Transamerica Occidental Life Ins. Co. of Cal.*, 699 P.2d 376, 384 (Ariz. Ct. App. 1984). *See also Rawlings*, 726 P.2d at 578 ("We restrict [the availability of punitive damages] to those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind. The evil mind which will justify the imposition of punitive damages may be manifested in either of two ways. It may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.").

Here, as explained, Plaintiff has offered no evidence that USAA acted in bad faith. Therefore, USAA's request for summary judgment in its favor on Count Three is granted.

Accordingly,

**IT IS ORDERED** that USAA's motion for summary judgment (Doc. 20) is **granted**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of August, 2023.

_____
Dominic W. Lanza
United States District Judge